**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| JUAN TORRES<br>122 E. Eagle Street<br>Findlay, Ohio 45840, | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>)<br>) | **COMPLAINT FOR DAMAGES** |
| TEXAS ROADHOUSE MANAGEMENT CORP.<br>6040 Dutchmans Lane<br>Louisville, Kentucky 40205 | )<br>)<br>)<br>)<br>) | **AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED**<br>**HEREIN** |
| **Serve Also:**<br>CORPORATION SERVICE COMPANY<br>50 West Broad Street, Suite 1330<br>Columbus, Ohio 43215 | )<br>)<br>)<br>)<br>) | |

Plaintiff, Juan Torres by and through undersigned counsel, as his Complaint against Defendant Texas Roadhouse Management Corp., states and avers the following:

**PARTIES, VENUE, & JURISDICTION**

1. Torres is a resident of the city of Findlay, county of Hancock, state of Ohio.

2. Texas Roadhouse Management Corp. is a foreign corporation who conducts business under the name "Texas Roadhouse," throughout the state of Ohio.

3. Texas Roadhouse owns and/or operates a place of business at 1111 Trenton Avenue, Findlay, Ohio 45840. ("Findlay Restaurant")

4. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Torres is alleging a claim under Title VII of the Civil Rights Act of 1964, 28 U.S.C. § 2000e.

5. All material events alleged in this Complaint occurred in Hancock County, Ohio.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

7. Within 300 days of the conduct alleged below, Torres filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2021-01437 against Texas Roadhouse.

8. On or about May 15, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Torres regarding the Charges of Discrimination brought by Torres against Texas Roadhouse in Charge No. 532-2021-01437.

9. Torres received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

10. Torres has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

11. Torres has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

12. Torres began working at Texas Roadhouse on or about December 27, 2009.

13. Torres worked for Texas Roadhouse in its Findlay Restaurant.

14. Torres began working for Texas Roadhouse as a prep cook.

15. Torres is Hispanic.

16. Throughout Torres' employment with Texas Roadhouse, Texas Roadhouse would only staff its Hispanic employees in the kitchen. ("Staffing Practices")

17. A Caucasian manager was responsible for the Staffing Practices.

18. In or around 2014, Texas Roadhouse promoted Torres to Key Hourly Manager.

19. Despite Torres' promotion, he and other Hispanic employees were staffed only in the kitchen.

20. A position in Texas Roadhouse's kitchen is less desirable than other positions at Texas Roadhouse because kitchen employees are unable to collect tips, unlike waitstaff.

21. As a result of the Staffing Practices, Texas Roadhouse treated Caucasian employees more favorably than similarly situated Hispanic employees.

22. The Staffing Practices were because of race.

23. Placing individuals in a position in which they make less money for similar work is an adverse action.

24. Placing individuals in a position in which they make less money for similar work is an adverse employment action.

25. The Staffing Practices constitute discrimination on the basis of race.

26. The Staffing Practices were willful.

27. The Staffing Practices were intentional.

28. Throughout Torres' tenure as Key Hourly Manager, he received less favorable treatment than similarly situated Caucasian employees. ("Disparate Treatment Based on Race")

29. The Disparate Treatment Based on Race included Torres' having minimal staff to help close the Findlay Restaurant for the evening, while similarly situated Caucasian employees were always provided extra assistance so that they could close the Findlay Restaurant on time.

30. As a result of the Disparate Treatment Based on Race, Torres often stayed well beyond his shift so he could properly close the Findlay Restaurant for the evening.

31. Similarly situated Caucasian employees did not stay well beyond their shifts so they could properly close the Findlay Restaurant for the evening.

32. The Disparate Treatment Based on Race was done because of race.

33. As a result of the Disparate Treatment Based on Race, Hispanic employees were treated less favorably than similarly situated Caucasian employees.

34. Giving Hispanic employees less assistance than similarly situated Caucasian employees is an adverse action.

35. Giving Hispanic employees less assistance than similarly situated Caucasian employees is an adverse employment action.

36. The Disparate Treatment Based on Race constitutes discrimination on the basis of race.

37. The Disparate Treatment Based on Race was willful.

38. The Disparate Treatment Based on Race was intentional.

39. On multiple occasions, Torres reported the Disparate Treatment Based on Race to a Caucasian supervisor, Lance Last Name Unknown ("LNU"). ("Disparate Treatment Reports")

40. Based on Texas Roadhouse's policies, a report of discrimination on the basis of race is a significant workplace event.

41. Based on Texas Roadhouse's policies, each of Torres' Disparate Treatment Reports was considered a significant workplace event.

42. An investigation should include interviewing the complainant.

43. An investigation should include interviewing the subject of the complaint.

44. An investigation should include interviewing the subject of the reported discrimination.

45. An investigation should include interviewing witnesses to the reported discrimination.

46. An investigation should include getting a written statement from the complainant.

47. An investigation should include getting a written statement from the subject of the complaint.

48. An investigation should include getting a written statement from the subject of the reported discrimination.

49. In response to each of Torres' Disparate Treatment Reports, Defendant did not interview Torres.

50. In response to each of Torres' Disparate Treatment Reports, Defendant did not interview any Caucasian supervisor or manager.

51. In response to each of Torres' Disparate Treatment Reports, Defendant did not interview any employee.

52. In response to each of Torres' Disparate Treatment Reports, Defendant did not get a written statement from Torres.

53. In response to each of Torres' Disparate Treatment Reports, Defendant did not get a written statement from any Caucasian supervisor or manager.

54. In response to each of Torres' Disparate Treatment Reports, Defendant did not get a written statement from any employee.

55. In response to each of Torres' Disparate Treatment Reports, Defendant conducted no investigation whatsoever.

56. By failing to investigate each of Torres' Disparate Treatment Reports, Defendant ratified its supervisors' and managers' conduct.

57. By failing to investigate each of Torres' Disparate Treatment Reports, Defendant allowed its supervisors' and managers' conduct to continue.

58. Failing to investigate a report of discrimination on the basis of race is an adverse action.

59. Failing to investigate a report of discrimination on the basis of race is an adverse employment action.

60. Defendant willfully failed to investigate each of Torres' Disparate Treatment Reports.

61. Defendant intentionally failed to investigate each of Torres' Disparate Treatment Reports.

62. The Disparate Treatment Based on Race continued throughout Torres' employment and until his termination.

63. Torres' made Disparate Treatment Reports throughout Torres' employment and until his termination.

64. Defendant failed to investigate each of Torres' Disparate Treatment Reports throughout his employment.

65. In making the Disparate Treatment Reports, Torres was opposing discrimination on the basis of race.

66. On or about May 19, 2020, Torres and another Hispanic coworker were tasked with conducting inventory of the restaurant outside of business hours. ("May 19, 2020 Inventory Check")

67. During the May 19, 2020 Inventory Check, a container of cooking oil spilled, so Torres attempted to clean the spill by using a hose connected to grease sink. ("May 19, 2020 Oil Cleanup")

68. During the May 19, 2020 Oil Cleanup, Nick Camarata, a Caucasian supervisor, watched Torres clean up the oil and took no corrective action against Torres.

69. On or about May 20, 2020, the day after the May 19, 2020 Oil Cleanup, Jennifer Weston, Texas Roadhouse's managing partner, told Torres that he should not have used her "$ 2000 hose to clean the floor" because the hose is for dishes. ("May 20, 2020 Reprimand")

70. Weston is Caucasian.

71. At all times mentioned herein, Weston was working within the scope of her duties as managing partner of Defendant.

72. In response to the May 20, 2020 Reprimand, Torres told Weston that he was only using it to clean up a mess and asked Weston to review the security footage, which would confirm Torres' explanation. ("Explanation for Cleaning the Restaurant Floor")

73. In response to Torres' Explanation for Cleaning the Restaurant Floor, Weston did not check the security footage.

74. In response to Torres' Explanation for Cleaning the Restaurant Floor, Weston removed Torres from a group chat amongst Texas Roadhouse's managers.

75. In response to Torres' Explanation for Cleaning the Restaurant Floor, Weston scheduled Torres only as "point cook."

76. A point cook is a lesser job than a Key Hourly Manager.

77. Following the May 20, 2020 Reprimand, Torres was demoted. ("Demotion")

78. Similarly situated Caucasian employees were not reprimanded for using the wrong hose to clean a spill.

79. Similarly situated Caucasian employees were not demoted for using the wrong hose to clean a spill.

80. Demoting an employee is an adverse action.

81. Demoting an employee is an adverse employment action.

82. Torres' Demotion was because of his race.

83. Torres' Demotion was because of his Disparate Treatment Reports.

84. In performing the Demotion, Defendant treated Torres less favorably than similarly situated Caucasian employees.

85. In performing the Demotion, Defendant made it less likely for a reasonable employee to report and/or oppose workplace discrimination.

86. Torres' Demotion constitutes discrimination on the basis of race.

87. Torres' Demotion constitutes retaliation.

88. Despite the Demotion, Torres continued to work hard at his job.

89. Following Torres' Demotion, the Disparate Treatment Based on Race became more frequent ("Worsened Disparate Treatment Based on Race").

90. The Worsened Disparate Treatment Based on Race included Defendant's reprimanding any employee who tried helping Torres.

91. The reprimands during the Worsened Disparate Treatment Based on Race were directed towards Hispanic employees.

92. Defendant did not reprimand employees for assisting similarly situated Caucasian employees.

93. By reprimanding employees during the Worsened Disparate Treatment Based on Race, Defendant made it more difficult for Torres to complete work duties that similarly situated Caucasian employees would receive assistance with.

94. Making it more difficult for a Hispanic employee to complete his work than similarly situated Caucasian employees is an adverse action.

95. Making it more difficult for a Hispanic employee to complete his work than similarly situated Caucasian employees is an adverse employment action.

96. The Worsened Disparate Treatment Based on Race was because of Torres' race.

97. The Worsened Disparate Treatment Based on Race was because of Torres' Disparate Treatment reports.

98. By performing the Worsened Disparate Treatment Based on Race, Defendant treated Torres less favorably than similarly situated Caucasian employees.

99. By performing the Worsened Disparate Treatment Based on Race, Defendant made it less likely for a reasonable employee to report and/or oppose discrimination on the basis of race.

100. The Worsened Disparate Treatment Based on Race constitutes discrimination on the basis of race.

101. The Worsened Disparate Treatment Based on Race constitutes retaliation.

102. The Worsened Disparate Treatment Based on Race was willful.

103. The Worsened Disparate Treatment Based on Race was intentional.

104. Torres' Disparate Treatment Reports included reports of the Worsened Disparate Treatment Based on Race.

105. On or about October 8, 2020, Torres asked Weston to take him off of Texas Roadhouse's schedule temporarily because Torres had a family emergency that required Torres to travel to the state of Texas. ("October 8, 2020 Request for Temporary Leave")

106. In response to the October 8, 2020 Request for Temporary Leave, Weston berated Torres for needing to take time off to deal with a family emergency.

107. Weston did not berate similarly situated Caucasian employees who requested time off from work.

108. On or about October 11, 2020, Torres went to the state of Texas to deal with his family emergency. ("October 11, 2020 Leave for Family Emergency")

109. Torres returned from the October 11, 2020 Leave for Family Emergency on October 21, 2020. ("October 21, 2020 Return to Ohio")

110. Immediately following his October 21, 2020 Return to Ohio, Torres contacted Texas Roadhouse to inform management that he had returned from his family emergency. ("October 21, 2020 Return-to-Work Call")

111. During the October 21, 2020 Return-to-Work Call, Weston demanded that Torres return to work at Texas Roadhouse's Findlay Restaurant immediately.

112. At the time of the October 21, 2020 Return-to-Work Call, Torres had driven all day from Texas to Ohio, so Torres told Weston that he was unable to work for that day.

113. During the October 21, 2020 Return-to-Work Call, Torres told Weston that he would try finding a co-worker to cover his shift if necessary.

114. During the October 21, 2020 Return-to-Work Call, Weston expressed her frustration that Torres was unwilling to return to work immediately after having driven all day.

115. The day after the October 21, 2020 Return-to-Work Call, on October 22, 2020, Torres received a phone call from Mike Mullin, a Caucasian manager at Texas Roadhouse's Findlay Restaurant. ("October 22, 2020 Phone Call")

116. During the October 22, 2020 Phone Call, Mullin told Torres that Torres was taken off of the schedule.

117. During the October 22, 2020 Phone Call, Mullin advised Torres that Torres should not return to work at Texas Roadhouse.

118. On or about October 22, 2020, Torres was terminated from his employment with Texas Roadhouse. ("Termination")

119. Defendant has a progressive disciplinary policy that calls for escalating levels of discipline for disciplinary infractions, beginning with a verbal warning, followed by a written warning, and ultimately leading up to termination.

120. Torres did not receive a verbal warning.

121. Torres did not receive a written warning.

122. Torres did not receive a second written warning.

123. Defendant did not discipline Torres whatsoever.

124. Skipping steps in a progressive discipline policy is an adverse action.

125. Skipping steps in a progressive discipline policy is an adverse employment action.

126. Defendant willfully skipped steps in its own progressive disciplinary policy when terminating Torres.

127. Defendant intentionally skipped steps in its own progressive disciplinary policy when terminating Torres.

128. Torres was never given a reason for his Termination.

129. Torres was never given a reason for his Termination because his Termination was because of his race.

130. On information and belief, Defendant will assert that Torres' Termination was because Torres took leave from work during October 11, 2020 Leave for Family Emergency. ("Purported Basis for Termination")

131. Defendant did not terminate the employment of similarly situated Caucasian employees who took time off of work for longer than Torres and then returned to work without issue.

132. The Purported Basis for Termination has no basis in fact.

133. The Purported Basis for Termination did not actually motivate Torres' Termination.

134. Torres was actually terminated because of his race.

135. Torres was actually terminated because he made protected complaints about Defendant's race discrimination.

136. Torres' Termination was because of his race.

137. Torres' Termination was because of his Disparate Treatment Reports.

138. In terminating Torres, Defendant treated Torres less favorably than similarly situated Caucasian employees.

139. In terminating Torres, Defendant made it less likely for a reasonable employee to report and/or oppose unlawful discrimination on the basis of race.

140. The Purported Basis for Termination is pretext for discrimination on the basis of race.

141. The Purported Basis for Termination is pretext for retaliation.

142. The above facts show that Defendants engaged in an unlawful pattern and practice of race discrimination.

143. The above facts show that Defendants engaged in an unlawful pattern and practice of retaliation.

144. As a direct and proximate result of Defendant's conduct, Torres suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT I: RACE DISCRIMINATION IN VIOLATION OF TITLE VII

145. Torres restates each and every prior paragraph of this complaint, as if it were fully restated herein.

146. As a Hispanic, Torres is a member of a protected class under 42 U.S.C. § 2000 *et seq*.

147. Throughout his employment, Torres was treated less favorably than similarly situated Caucasian employees.

148. 42 U.S.C. § 2000e-2 makes it unlawful to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

149. Based on Defendant's conduct, as alleged above, Defendant violated 42 U.S.C. § 2000e-2 by discriminating against Torres on the basis of his race.

150. As a result of Defendant's discrimination against Torres in violation of 42 U.S.C. § 2000e-2, Torres has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Torres to injunctive, equitable, and compensatory monetary relief.

151. As a result of Defendant's discrimination against Torres in violation of 42 U.S.C. § 2000e-2, Torres has suffered mental anguish and emotional distress, including, but not limited to,

depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain suffering.

152. In its discriminatory actions as alleged above, Defendant acted with malice or reckless indifference to the rights of Torres, thereby entitling Torres to an award of punitive damages.

153. To remedy the violations of the rights of Torres secured by 42 U.S.C. § 2000e-2, Torres requests that the Court award him the relief demanded below.

## COUNT II: RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e-3

154. Torres restates each and every prior paragraph of this complaint, as if it were fully restated herein.

155. As a Hispanic, Torres is a member of a protected class under 42 U.S.C. § 2000 *et seq*.

156. As a result of the discriminatory conduct described above, Torres reported the Disparate Treatment Based on Race and the Worsened Disparate Treatment Based on Race.

157. In reporting the Disparate Treatment Based on Race and the Worsened Disparate Treatment Based on Race, Torres was opposing the discriminatory actions described above.

158. In response to Torres' protected complaints of discrimination, Defendant took adverse actions and adverse employment actions against Torres by demoting him, preventing other employees from assisting Torres, and terminating Torres' employment.

159. 42 U.S.C. § 2000e-3(a) makes it an unlawful discriminatory practice to "discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

160. As a result of Defendant's retaliation against Torres in violation of 42 U.S.C. § 2000e-3, Torres has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Torres to injunctive, equitable, and compensatory monetary relief.

161. As a result of Defendant's retaliation against Torres in violation of 42 U.S.C. § 2000e-3, Torres has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain suffering.

162. In its retaliatory actions as alleged above, Defendant acted with malice or reckless indifference to the rights of Torres, thereby entitling Torres to an award of punitive damages.

163. To remedy the violations of the rights of Torres secured by 42 U.S.C. § 2000e-3, Torres requests that the Court award him the relief demanded below.

## **DEMAND FOR RELIEF**

WHEREFORE, Torres demands from Defendants the following:

(a) Issue an order requiring Defendant to restore Torres to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against Defendant of compensatory and monetary damages to compensate Torres for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Torres claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

        Respectfully submitted,

        _/s/ Brian D. Spitz_____
        Brian D. Spitz (0068816)
        **THE SPITZ LAW FIRM, LLC**
        25200 Chagrin Boulevard, Suite 200
        Beachwood, OH 44122
        Phone: (216) 291-4744
        Fax:   (216) 291-5744
        Email: brian.spitz@spitzlawfirm.com

        *Attorney For Plaintiff Juan Torres.*

## JURY DEMAND

Plaintiff Juan Torres demands a trial by jury by the maximum number of jurors permitted.

        _/s/ Brian D. Spitz_____
        Brian D. Spitz (0068816)